PERSONAL FINANCE COMPANY *vs.* JOSEPH MARTIN FRANCO.

JULY 17, 1946.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is an action of the case in assumpsit against the defendant as the maker of a certain promissory note, the plaintiff being the payee thereof. In the superior court the trial justice, at the conclusion of all the evidence, directed the jury to return a verdict for the defendant. The plaintiff thereupon duly prosecuted to this court its bill of exceptions which is now before us for determination.

The plaintiff has five exceptions, two of them, the third and fourth, being expressly waived, but the other three are pressed. As we view the case it is necessary for us to consider only the first two exceptions. These are to the action of the trial justice, first, in directing a verdict in favor of the defendant and, second, in refusing to grant the plaintiff's motion that a verdict be directed in its favor.

Certain of the facts appearing in evidence are not in dispute. The note in question bears the date of October 15, 1935, when the defendant borrowed from the New England Equity Corporation, the plaintiff corporation under an earlier name, and then and now in the business of making small loans, the sum of $150 with interest at 3½% per month, payable in nineteen installments of $10.55 each on the fifteenth day of each month thereafter, and in a twentieth installment of a different amount. The undisputed balance of the principal due on the note since January 21, 1937, according to the plaintiff's books, has been $82.79. To this sum interest must be added to complete the plaintiff's claim. With the money thus borrowed the defendant purchased a 1930 used DeSoto sedan automobile which, together with certain of the defendant's furniture, was mortgaged to the plaintiff as security for the loan.

The first three installment payments were made in advance of their respective due dates. The one due November 15, 1935 was paid to the plaintiff November 7; the one due December 15 was paid November 30; and the one due Janu-

ary 15, 1936 was paid January 6 of that year. On these payments the plaintiffs credited from the first, $3.85 to interest and the balance to principal; from the second, $3.84 to interest and the balance to principal; and from the third, $5.75 to interest and the balance to principal. It is not questioned that the amounts thus credited to interest represented only interest *actually earned* and accrued up to and at the time of each respective payment and that no interest was computed or credited in advance.

After January 1936, only a few small payments were made at intervals, the last one being on January 21, 1937. In January, 1936 the defendant attempted to persuade the seller of the automobile to take it back as its condition was unsatisfactory. The latter declined to do this and in February, 1936 the automobile was delivered to the plaintiff by the defendant. The plaintiff finally sold it with some difficulty in May, 1936 for the net amount of $45, which it credited to the principal of the note. The present action was begun by writ dated September 28, 1943.

The defendant contends that the acceptance by the plaintiff of installments of interest on the note in advance of the dates when such installments were actually due amounted to a violation of the terms of the statute then in effect regulating the conduct of the business of corporations engaged in the making of small loans and that as a result the plaintiff's claim on its note was forfeited. The defendant maintains that the payments should have been credited entirely to principal.

The statute in question is public laws 1923, chapter 427. Section 13 of that chapter reads in part as follows: "Every person, co-partnership and corporation licensed hereunder may loan any sum of money not exceeding in amount the sum of three hundred dollars and may charge, contract for and receive thereon interest at a rate not to exceed three and one-half per centum per month. Interest shall not be payable in advance, or compounded and shall be computed on unpaid balances. . . . If interest or charges in excess of those

permitted by this act shall be charged, contracted for, or received, the contract of loan shall be void and the licensee shall have no right to collect, or receive any principal, interest or charges whatsoever." Section 17 of the statute also provided: "No loan for which a greater rate of interest or charge than is allowed by this act has been contracted for or received, wherever made, shall be enforced in this state . . . ."

In directing the verdict for the defendant the trial justice accepted as sound and valid the defendant's above-mentioned contention. He construed the statute strictly and narrowly, and ruled that as long as *any* interest whatever had been taken in advance of the due date of the installments the note was void. He based his ruling largely on *Colonial Plan Co.* v. *Tartaglione,* 50 R. I. 342. That case, however, is clearly distinguishable on its facts from the present case. There it appeared without dispute that during the first six weeks of the loan the plaintiff company had taken interest covering eleven weeks, and most of the interest payments were for a greater amount than was due when taken. At page 344 the court said: "Interest for five weeks in advance ·was intentionally taken and credited on the note." In the instant case, however, the only interest credited was that which had actually accrued and been earned at the time of the taking. No interest was taken in advance within the ordinary and commonly accepted meaning of that term.

The statute merely provides that "Interest shall not be payable in advance." The natural and reasonable construction of this phrase plainly is that such interest shall not be payable in advance of the date when it has accrued and has been earned. Upon consideration, we are of the opinion therefore that the trial justice was in error in construing the statute as he did and in holding that the note in issue was void because the plaintiff credited the defendant with interest in the manner disclosed by the evidence. This case is not governed by the decision in *Colonial Plan Co.* v. *Tartaglione, supra.*

The defendant, however, also urges that the plaintiff's

action is barred by the statute of limitations, because it was brought on September 28, 1943, more than six years after the last payment on the note on January 21, 1937. The plaintiff meets this contention by pointing out that the running of the statute was tolled by the absence of the defendant from this state for a certain period between said above dates. The defendant, however, takes the position that while he was out of the state for a time he left property here which could have been attached by process of law.

The pertinent statute, G. L. 1938, chap. 510, §5, reads in part as follows: "If any person against whom there is or shall be cause for any action, hereinbefore enumerated, in favor of a resident of the state, shall at the time such cause accrue be without the limits thereof, or, being within the state at the time such cause accrues, shall go out of the state before said action shall be barred by the provisions of this chapter, and shall not have or leave property or estate therein that can be attached by process of law, then the person entitled to such action may commence the same, within the time before limited, after such person shall return into the state in such manner that an action may, with reasonable diligence, be commenced against him by the person entitled to the same . . . ."

On this point the evidence discloses the following facts: In the spring of 1942 the defendant left this state and went into Connecticut to work there. While he was away, his family, consisting of his wife and young children, lived in Bristol in this state with his wife's parents, the defendant having formerly maintained a home of his own in that town. He usually returned to Bristol from Connecticut at the end of each week, sometimes on Friday, but ordinarily on Saturday. He left to return to Connecticut early Monday morning. The evidence is in some conflict as to just how long he was in Bristol on these trips and as to what he did there. He contends that it shows that he could have been served with process on these occasions. The plaintiff argues otherwise. About July 1, 1943 the defendant came back from

Connecticut, obtained work in Bristol and continued to live there permanently from then on. He also contends that the evidence shows that while he was in Connecticut he left in this state an automobile which the plaintiff could have attached. Regarding this automobile it appears from the evidence that the defendant owned, at the time in question, a Chevrolet Victoria valued at about $195 which was not in use and which he stored in a driveway on the premises of his father-in-law in Bristol until it was sold in April, 1943. It was stored in such a manner that it was from 25 to 35 feet back from the highway and at the side of his father-in-law's house, which was some distance from the house where defendant had formerly lived with his family.

The plaintiff argues, among other things, that the above automobile should be considered as coming within the description of "family stores of a housekeeper", as set out in the statute exempting such articles from attachment. G. L. 1938, chap. 557, §1 (3). We are unable to agree with this contention. In view of all the facts and circumstances in evidence we find that the automobile in question cannot properly be held to come within the above-described exemption and to be exempt from attachment.

In this case the defendant claims that, on the evidence, his defense of the statute of limitations is good as a matter of law and supports the action of the trial justice in directing a verdict in his favor. The plaintiff, on the other hand, contends that neither of the defenses set up by the defendant has any merit as a matter of law, and that its motion for a directed verdict should have been granted. We do not agree with either contention.

In our opinion the evidence raises questions of fact under the defense of the statute of limitations which, in the first instance, should be submitted to a jury for its determination under proper instructions from the court. Such questions might well include, among others, one relating to whether reasonable diligence was exercised in obtaining service on the defendant, and another bearing on the issue as to whether

or not the defendant's ownership of the Chevrolet automobile, which he claimed the plaintiff could have attached, was so open and notorious that the plaintiff should have been put upon inquiry concerning it and whether the plaintiff had the means of ascertaining its location by exercising reasonable diligence.

We find, therefore, nothing in the evidence under either defense which justified the trial justice in directing a verdict for the defendant. His action in so doing was error. However, his ruling in refusing to direct a verdict for the plaintiff was correct, since material questions of fact, as indicated above, are raised by the evidence under the defendant's plea of the statute of limitations.

The plaintiff's first exception is sustained, its second exception is overruled, and the case is remitted to the superior court for a new trial.

*Hinckley, Allen, Tillinghast & Wheeler, John W. Baker,* for plaintiff.

*Lucien Capone,* for defendant.